**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LINDA MCDONALD | ) |
| 1506 ARAGONA BOULEVARD | ) |
| FORT WASHINGTON, MD 20744 | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| | ) |
| ALBERTO GONZALEZ | ) |
| In His Capacity As: | ) |
| UNITED STATES ATTORNEY GENERAL | )   Civil Action No. |
| U.S. DEPARTMENT OF JUSTICE | ) |
| 950 Pennsylvania Avenue, NW | ) |
| Washington, DC  20530 | ) |
| | ) |
|     Defendant. | ) |
| | ) |
| _____ | ) |

**COMPLAINT FOR UNLAWFUL DISCRIMINATION UNDER THE
REHABILITATION ACT OF 1973, RETALIATION AND REPRISAL UNDER TITLE
VII OF THE CIVIL RIGHTS ACT, REQUEST FOR COMPENSATORY DAMAGES
AND JURY DEMAND**

Plaintiff Linda McDonald, by and through her undersigned counsel, files this Complaint

against Defendant Alberto Gonzalez in his official capacity as United States Attorney General,

and alleges the following:

1.      This is an action brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §§

791, *et seq.*, and Title VII of the Civil Rights Act of 1991, *as amended*, 42 U.S.C. 2000e, *et seq.*,

for redress of unlawful discrimination on the basis of disability, retaliation and reprisal.

2.      As explained in more detail below, this action is brought to seek redress against

the United States Department of Justice through its Executive Office of Immigration Review

(hereafter referred to as "EOIR"), for discrimination against Linda McDonald on the basis of her

disability, her record of disability, and that she was regarded as a person with a disability, in

violation of the Rehabilitation Act of 1973, and all applicable laws and regulations implementing

that law and its protections.  Plaintiff further seeks relief for retaliation and reprisal against her

for engaging in protected conduct to advance her claim of disability, in violation of Title VII of

the Civil Rights Act.

3.      Plaintiff seeks compensatory damages for back pay, with interest, and other

monetary damages, including, but not limited to, attorneys fees and costs, and demands a trial by

jury on all triable claims.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). This

action is authorized pursuant to 29 U.S.C. §§ 791 and 794, and 29 C.F.R. § 1614.203, and 42

U.S.C. 2000e.  Venue is proper pursuant to 28 U.S.C. § 1391(e) because the Defendant resides in

this district.

## PARTIES

5.      Plaintiff Linda McDonald is a citizen of the United States, and resides in Fort

Washington, Maryland.  At all times relevant hereto, she was employed by Defendant, and is a

person who has a physical disability relating to a permanent impairment of her back, has a record

of such disability and impairment, and was regarded as disabled or impaired by Defendant and

his officers, managers and employees.

6.      Defendant Alberto Gonzalez is the Attorney General of the United States, and as

such, is head of the United States Department of Justice, which is subject to the jurisdiction of

this Court in this district.  The United States Department of Justice is a agency or arm of the

Government of the United States, and is therefore prohibited, pursuant to the Rehabilitation Act,

from discriminating against otherwise qualified people with disabilities, or persons regarded as

having disabilities, in the terms or conditions of employment, and is prohibited from retaliating

against any person in the exercise of their civil rights by Title VII.


## FACTS

7.      In July 1997 Complainant was hired by Defendant's executive department, EOIR,

in the position of Administrative Specialist, GS-0301-11, and was promoted to GS-12 and finally

to GS-13 in that position in October 1998.  As part of her Standard Form (SF) 171 submission,

Complainant provided the Agency with notice and documentation of a permanent disability

affecting several major life activities, including standing, walking, bending and lifting, and

provided, including documentation of a 20% disability rating as determined by the United States

Department of Veterans' Affairs (VA).

8.      In 2000, Plaintiff applied, was deemed as qualified, and was eventually selected

for a position as Program Analyst, GS-343-14 in the Court Evaluations Unit (CEU) of the Office

of the Chief Immigration Judge within the EOIR.  The vacancy announcement to which Plaintiff

applied indicated that frequent travel would be required.  Significantly for Plaintiff's claim

herein, however, the physical demands (Factor 8) for the position were described as "primarily

sedentary."

9.      Although she had been deemed qualified at the GS-14 level, Plaintiff was offered

the position at the GS-13 level.  Due to her desire to serve in the Program Analyst position, as

well as the upward mobility the position offered to the GS-14 level which she was qualified for,

Plaintiff accepted the position at the GS-13 level with the hope and expectation that she would have fair and reasonable opportunity for advancement.

10.     When she began her duties as a Program Analyst, Plaintiff eventually learned that she was expected to pack and handle shipping crates and trunks used to transport office equipment and supplies used by evaluation teams during on-site court evaluations.  Plaintiff discovered that these shipping crates, when packed, often weighed well in excess of 60 pounds, and sometimes more than 100 pounds.  Plaintiff found herself unable to lift these containers due to permanent injury to her back for which she had been deemed disabled, and which affected her overall strength and range of motion, her ability to bend, her ability to lift moderate to heavy objects, her ability to stand or walk long distances, climb stairs, or even sit for extended periods of time.

11.     On numerous occasions, Plaintiff notified her supervisors about the problem she had lifting the containers, and her need to be accommodated in handling the heavy containers, was given varying responses as to how to address the issue.  She was told by her first line supervisor and co-worker to use office personnel and on-site hotel staff to assist in movement of the containers.  Among other things, Plaintiff was instructed to order new packing containers that were purportedly easier to handle; however, when those containers arrived, they were, in fact, substantially larger and heavier than the prior containers Plaintiff had been expected to lift and carry.  Although the new containers (or trunks) had wheels (the prior containers Plaintiff had been expected to lift or carry did not), Plaintiff was still required Plaintiff to bend and lift the trunk in order to activate the wheels.  Since the new trunks were larger and weighed substantially more than the former containers, and because they required bending and lifting to be moved, they did not provide a viable alternative for Complainant to avoid aggravating her back injury

and lifting and bending limitations.

12.    At all times relevant to this action, Plaintiff continued to perform successfully in all other aspects of the job of Program Analyst, with the only obstacle to her complete effectiveness in her position being her inability to bend, lift and carry moderate to heavy objects as a result of her physical disability.

13.    The limitations of Plaintiff's physical impairment and her inability to lift and carry the heavy packages used by Defendant to transport materials for travel was manifested in a series of work-place injuries she sustained for attempting to lift and handle equipment used on trips, and was at relevant times required to seek medical attention for injuries to her back from handling such objects.   In March 2001, as a result of one such injury, Plaintiff had to seek medical attention, and was limited by her physician to lifting no more than five (5) pounds for a period of two weeks.  A few weeks later, her physician issued another sick slip to Plaintiff's employer, indicating Plaintiff's condition as "chronic," and imposed "indefinite" restrictions limiting her to no heavy lifting (greater than 10 lbs), as well as no prolonged heavy pushing, pulling, standing.

14.    In April 2001, Plaintiff's supervisor gave Plaintiff a letter requesting that she provide a doctor's report with detailed and specific information about the nature of her condition and physical limitations within less than two weeks.  Despite Plaintiff's best efforts, of which she kept Defendant apprised, it took her longer than the time allotted by her supervisor to arrange for a medical examination by her physician at the Veteran's Administration, where she received her medical care.  However, she provided her employer with information about her condition in a July 2001 letter from Dr. Gambel, a physician at the Walter Reed Army Medical Center ("WRAMC").  Dr. Gambel, who was not Plaintiff's primary physician (as that  physician

had left WRAMC since Plaintiff had last been seen), prepared a letter report for the agency

based on his review of the medical records and notes in Plaintiff's file prepared by her former

physician, and also summarized the findings of an occupational therapy work assessment of

Plaintiff conducted in May 2001.

15.     Dr. Gambel indicated that Plaintiff suffered from a chronic mechanical low back

pain, and was required to observe lifting and other restrictions to avoid exacerbation of her

injury.  The July 2001 letter report also suggested safe lifting limits of no more than 27 pounds.

With respect to the specific requirement that as a Program Analyst in the Court Evaluations Unit,

Plaintiff would be required to lift heavy packing and shipping containers, Dr. Gambel suggested

equipment modification, smaller loadings, lighter containers, and/or the use of dollies/rollers.

16.     Despite the information provided in the July 2001 letter, the Department of

Justice, through its officers in EOIR, considered the information contained in Dr. Gambel's letter

report as "non-responsive" to their request that Plaintiff provide information concerning her

physical condition and disability, and somehow determined that the letter report did not provide

the agency with information concerning whether any limitations existed on Plaintiff's ability to

perform the duties of her position as a Program Analyst.  However, though they claimed the

information provided by her physician was "non-responsive," Plaintiff's supervisors restricted

Plaintiff from her travel duties as a Program Analyst based on her back condition, despite the

fact that the letter report from Plaintiff's physician had not indicated any restriction on Plaintiff's

ability to travel, but only that modifications and adjustments be made to the packing and

shipping containers she would be required to lift and/or carry.

17.     During the time that she was not permitted to travel with the Court Evaluation

Unit teams, Plaintiff continued to perform all of the other duties of her job as a Program Analyst,

including preparing for future evaluations and working on various follow-up reports and other documentation from site visits. During the period when she was restricted from travel by her supervisors, there was a substantial backlog of site reports from prior visits that needed to be completed, and Plaintiff was ready and able to perform those duties, but they were not offered to her. Instead, her supervisors declined to allow Plaintiff to perform duties as a Program Analyst, as it was clear that her supervisors had already determined that they were going to remove Plaintiff from her position due to her disability and their regard of her as a disabled or impaired person, and Defendant's officers eventually conveyed their decision to so remove Plaintiff from her position as a Program Analyst.

18.    On or about July 30, 2001, Plaintiff received a letter from EOIR's Chief Immigration Judge indicating that she was being reassigned from the Court Evaluations Unit because of her inability to perform the duties of that position due to her back condition. In his letter, the Chief Judge acknowledged that Dr. Gambel's letter had described that Plaintiff had a physical impairment, which he further characterized as "not so severe as to impair your ability to work in general." Judge Creppy further stated in his letter that "[i]t is clear, however, that your impairment would and has affected your ability to perform one of the principal functions of your present job. That is, assisting the evaluation teams during their court evaluations. Inherent in that function is the moving and lifting of heavy boxes and equipment."

19.    The Chief Judge's letter made no reference to any attempted reasonable accommodation of Plaintiff, that Plaintiff had sought accommodation of her inability to lift heavy containers or trunks, or whether any of the accommodations recommended by Dr. Gamble were feasible for the agency. The Chief Judge's letter also failed to take into account the fact that Plaintiff was capable of, and had performed, all other duties of her position as Program

Analyst in the Court Evaluations Unit, including travel. The Chief Judge's letter also failed to acknowledge that nothing in the description for the GS-13/14 Program Analyst position indicated the lifting of heavy boxes and equipment as a "principal" or "essential" function of the position, which, in fact, had been rated as "primarily sedentary."

20.     Plaintiff objected to the transfer, and repeated her requests for reasonable accommodation of her back condition and impairment by the modifications suggested by her physician or some similar and reasonable alternatives. Her requests were repeatedly rejected by Defendant's officers and agency.

21.     By explicitly referencing her back condition and injury as the basis for transferring her from the Court Evaluations Unit in the decision to transfer her, Defendant, through its officers, confirmed that Plaintiff had a record of disability or impairment, and that Defendant regarded Plaintiff as a disabled or impaired person. Nevertheless, without any attempt to accommodate Plaintiff's actual and perceived physical impairment, Defendant subjected Plaintiff to the hostile and adverse conditions of diminished responsibility in the Program Analyst position, and then transferred her to a less gainful position in the Language Services Unit, a department that lacked adequate work and responsibility commensurate with Plaintiff's skills and abilities, and that lacked upward mobility.

22.     Following her transfer to the Language Services Unit because of her physical impairment that Defendant's department refused to accommodate, Plaintiff was subjected to adverse work conditions that caused mental and emotional anguish and frustration as she lacked a proper job description or duties commensurate with her documented and demonstrated skills, abilities and experience. Plaintiff spent a great deal of time after her transfer without any assigned work, or doing clerical work rather than duties appropriate for someone at the GS-13

level who had been qualified at the GS-14 level.  The lack of adequate duties in the Language

Services Unit, while the Court Evaluations Unit remained backlogged with overdue reports, only

underscored the discriminatory and retaliatory manner in which Defendant's officers and

managers responded to Plaintiff's physical impairment and their regard of her as a disabled

person, and in retaliation for her efforts to obtain reasonable accommodation for her disability

and impairment.

23.     By transferring her to the Language Services Unit with little or no job

responsibilities or duties for months at a time, and with no upward mobility, Plaintiff was

unlawfully retaliated against because of her request for reasonable accommodation of the

"requirement" to lift heavy containers as a Program Analyst.  Plaintiff's complaint brought

attention to the fact that persons in the Program Analyst position, which had been described,

rated and announced as a "primarily sedentary," professional and managerial position, were

being expected to lift and haul heavy containers and trunks, in violation of the position

certification approved by the Office of Personnel Management ("OPM").  Defendant's officers

and agents were clearly embarrassed by this exposure, and eventually amended the position

description and announcement to include a requirement of lifting up to fifty (50) pounds when

they advertised the position for Plaintiff's replacement.

24.     Because of Plaintiff's request for accommodation and her complaint for redress,

Defendant's officers and agents retaliated against Plaintiff by placing her in a position where she

would have little to no opportunity to use the significant administrative and technical knowledge,

skills and abilities that had supported her qualification as a Program Analyst at the GS-14 level,

leaving her in a marginalized and humiliated position within the agency, all in retaliation and

reprisal for her decision to pursue her request and her claim for reasonable accommodation of

her disability and physical impairment.

25.    After her transfer to the Languages Services Unit, and the continued rejection or denial of her requests for reasonable accommodation of her physical disability and impairment to enable her to continue her duties as a Program Analyst in the Court Evaluation Unit, Plaintiff sought EEO counselor regarding the failure of the agency to accommodate her physical disability and impairment on August 22, 2001.  Jennifer Tyler was assigned as EEO counselor. On September 21, 2001, Ms. Tyler issued Plaintiff a Notice of Right to File a Discrimination Complaint.

26.    On October 1, 2001, more than forty-five (45) days after the event, Plaintiff timely initiated a formal administrative complaint.  Her complaint was assigned for investigation to Anne J. King, EEO Investigator, McCauley & Associates.  By report dated July 29, 2002, Plaintiff's complaint was investigated.  Plaintiff amended her complaint in January 2002 to add a claim of retaliation and reprisal in her transfer to the Language Services Unit and the lack of meaningful work and responsibility in that position.  By letter dated February 20, 2002, Plaintiff's amendment to her complaint was accepted.

27.    Plaintiff received an Acknowledgement and Order dated May 5, 2003 granting her request for a hearing before the Equal Opportunity Commission ("EEOC").

28.    Before the EEOC, Plaintiff moved for judgment on her claim of discrimination, and the agency cross-moved.  The EEOC, by Administrative Judge Andrew Culbertson, by Order Entering Judgment dated February 24, 2005 entered judgment for the agency.  The Department of Justice, through its Complaint Adjudication Office, upheld the decision of the EEOC, and issued a Final Order dated April 4, 2005, and  also notified Plaintiff of her right to appeal or to file this action within ninety (90) days of receipt of the April 4, 2005 Final Order.

10

Plaintiff received the Final Order on or about April 6, 2005, by mail.

29.    Plaintiff has exhausted the administrative remedies available to her under the

Rehabilitation Act, and all conditions precedent to the institution of this suit have been fulfilled.

COUNT ONE – DISCRIMINATION IN VIOLATION OF REHABILITATION ACT § 501

30.    Plaintiff realleges paragraphs 1-30 of this Complaint as if fully set forth herein.

31.    Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, prohibits the federal

government from discriminating against otherwise qualified people with disabilities in the terms

or conditions of their employment, and requires the federal government to provide reasonable

accommodation of otherwise qualified persons with disabilities.  This prohibition and mandate

similarly protects federal employees who have a record of disability or impairment, and those

whom the government regards as disabled.

32.    Due to her physical impairment of a permanent back injury, and the limitations it

imposes on one or more of her major life activities, Plaintiff is a person with a disability within

the meaning of the Rehabilitation Act.  Plaintiff is also a person with a record of impairment

documented by her Veteran Administration disability rating, and the information provided to her

immediate supervisors at EOIR from her medical providers concerning the affect of her

impairment and disability.   Plaintiff was also specifically regarded as a person with a disability

or impairment by her employer, who expressly identified her impairment as the reason for

removing her from her position as Program Analyst.

33.    Given her job skills and unquestioned qualification to perform the duties of

Program Analyst, Plaintiff was capable of performing all the essential functions of a GS-13/14

Program Analyst according to the Position Description and Vacancy Announcement under which

she applied with Defendant's agency fully aware of her status as a disabled person based on her

employment application. Defendant's agency therefore violated section 501 of the

Rehabilitation Act when it denied added the "qualification" after hiring Plaintiff that she be

required to lift travel containers in excess of sixty (60) pounds, and refusing to accommodate her

in this "new" requirement by providing alternative packing and handling procedures for

movement of the travel containers. Defendant's officers and agents added that "requirement" to

the Program Analyst position in order to avoid the obligation to reasonably accommodate

Plaintiff.

34.    Defendant further discriminated against Plaintiff by restricting her from

performing all of the other duties of the Program Analyst that she was fully capable and qualified

to perform, by regarding her as more disabled and limited than her medical report indicated, all

in order to deny Plaintiff reasonable accommodation to allow her to continue to function in the

Program Analyst position, and in violation of Plaintiff's rights under Section 501 of the

Rehabilitation Act.

35.    Plaintiff is also a person with a record of impairment pursuant to Section 501 of

the Rehabilitation Act, in that Defendant's departments and agencies have been on full notice

since her initial employment of the fact that Plaintiff was determined to be partially disabled by

the Veteran's Administration. In addition, and in direct response to the request of Defendant's

officers, Plaintiff provided medical information that documented and described the nature of her

physical disability and impairment. Defendant's officers specifically took cognizance of this

record of impairment and based its decision to change the terms and conditions of Plaintiff's

employment based on this record, without providing reasonable accommodation of Plaintiff, and

in violation of her rights under Section 501 of the Rehabilitation Act.

36.    Plaintiff was regarded by Defendant's officers and agency as a person with a

disability under Section 501 of the Rehabilitation Act, and the decision to change the terms and

conditions of Plaintiff's employment based on that regard of her as a physically impaired and/or

disabled person, without providing reasonable accommodation of Plaintiff, and in violation of

her rights under Section 501 of the Rehabilitation Act.

37.    As a result of the unlawful discrimination against her on the basis of her disability

or physical impairment, Plaintiff has suffered loss of employment opportunity, mental and

emotional distress.

COUNT TWO: DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF
THE CIVIL RIGHTS ACT

38.    Plaintiff realleges paragraphs 1-37 of this Complaint as if fully set forth herein.

39.    As a result of Plaintiff's attempts to receive reasonable accommodation of her

physical disability and impairment, Defendant's officers and agents adversely changed the terms

and conditions of Plaintiff's employment by placing her in position that lacked meaningful and

gainful professional responsibility, opportunity and advancement.  After having applied and been

qualified for the position of Program Analyst in the Court Evaluation Unit at the GS-14 level,

after her request to receive non-discriminatory accommodation of her physical impairment,

Plaintiff was placed in a position in the Languages Services Unit that was not well-defined or

developed, and one in which her background, knowledge and skills were not well-suited.

Plaintiff was placed in this position in retaliation for her decision to advance her effort to be

accommodated in the Program Analyst position.

40.    The fact that Plaintiff was unable to meet the undisclosed "principal function" of

the Program Analyst position that she be capable of lifting sixty (60) pounds or more packing

and shipping trunks and containers, and required accommodation due to her inability to lift such

heavy trunks and containers, had the effect of drawing unfavorable attention to the fact that

Defendant's officers had failed to include this so-called "principal function" in the position

description for the Program Analyst submitted and approved by OPM, in violation of OPM

regulations.  The actual description for the position to which Plaintiff applied, was deemed

qualified and selected for contained **no** indication of such strenuous physical requirements.

Once she became aware of this obligation, Plaintiff's made numerous requests for

accommodation in this unanticipated requirement of the job by asking the agency to develop

alternative arrangements for the shipping containers.  Plaintiff's informal and formal request for

reasonable accommodation between March and August 2001, and thereafter, exposed that the

GS-13/14 Program Analyst position contained this incongruent requirement of strenuous manual

exertion.

41.    Defendant's officers and agents retaliated against Plaintiff by deeming her

"unable" to perform a "principal function" of the Program Analyst position, despite the fact that

the **only** function Plaintiff could not perform was lifting heavy containers, a function that was

not identified in the position description, announcement, or job rating for the GS-13/14 Program

Analyst, and something Plaintiff was not even of aware until she was began her travel activities

in the position.  By  even deeming such ability to lift heavy trunks and containers a "principal

function" of a professional series position to avoid Plaintiff's request for accommodation,

Defendant's officers and agents manifested hostile and retaliatory animus towards Plaintiff for

the express purpose of removing her from the position.  Defendant used this new "requirement"

to justify transfer Plaintiff out of the upwardly-mobile Program Analyst in the Court Evaluations

Unit to another less substantive and gainful position that lacked upward mobility.

42.      Defendant's officers continued their pattern of retaliatory treatment of Plaintiff by

placing her in a position that was "primarily sedentary" (as the Program Analyst position was

supposed to be), but lacking job responsibilities and opportunities that the Program Analyst

position had.  Defendant's officers and agents further marginalized Plaintiff by failing to provide

her with assignments or clear responsibilities for several months during which she continued to

pursue her claim of discrimination based on her disability and physical impairment.

43.      The actions of Defendant's officers by transferring Plaintiff into an under

developed and marginal position because of her request to be accommodated for her physical

impairment is unlawful retaliation in violation of the Rehabilitation Act and Title VII of the Civil

Rights Act.  Plaintiff was subjected to changed, adverse and unfavorable terms and conditions of

her employment as a result of her disability and physical impairment, and her effort to obtain

accommodation for her impairment.


COUNT THREE: COMPENSATORY DAMAGES

44.      Plaintiff realleges paragraphs 1-43 of this Complaint as if fully set forth herein.

45.      As a result of the discriminatory and retaliatory treatment of Plaintiff by

Defendant's officers and agents, Plaintiff has suffered mental and emotional anguish and

distress.  Plaintiff also suffered lost wages by being transferred into a position that lacked

promotion opportunity, especially since Plaintiff was deemed qualified at the GS-14 level when

she was hired into the Program Analyst position.  The discriminatory and retaliatory treatment of

Plaintiff by Defendant's officers delayed Plaintiff's advancement to the GS-14 level, and the loss

of wages, other benefits and opportunities that would have accompanied such advancement.


## COUNT FOUR: TRIAL BY JURY

46.    Plaintiff realleges paragraphs 1-45 of this Complaint as if fully set forth herein.

47.    Plaintiff requests a trial by jury on all issues so triable.


## REQUEST FOR RELIEF

48.    Plaintiff realleges paragraphs 1-47 of this Complaint as if fully set forth herein.

49.    Plaintiff requests that this Honorable Court find in her favor on her claims of

violation of the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act, award her

damages in the amount of $300,000 for emotional and mental anguish suffered as a result of

these violations, back pay, with interest, attorneys fees and costs as authorized by law, and any

other such relief as the Court deems just and proper.


Respectfully submitted, this _____ day of July, 2005.


_____
Kimberly Nickelson Tarver (#422869)
Attorney At Law
1498-M Reisterstown Rd., #247
Baltimore, MD  21208
410-922-3095 (telephone)
410-922-6220 (facsimile)


16